[No. 4820.]

## BUTSCH v. SMITH.

1. **Conveyances—Absolute Deed as Mortgage—Evidence—Sufficiency.**

   In an action to have a deed absolute on its face adjudged a mortgage, the proof must be clear, certain, satisfactory, unequivocal, trustworthy and convincing—in short, the case must be made out beyond a reasonable doubt.—P. 66.

2. **Same—Circumstances to Be Considered.**

   In an action to have a deed absolute on its face declared a mortgage, the fact that the property was worth $10,000 at the date of the instrument, and the consideration was but $3,000, is a circumstance to be considered in determining the issue. —P. 68.

3. **Evidence—Opinion Evidence—Value of Property—Qualification of Witness.**

   A witness is not competent to give his opinion of the value of real estate, unless it is shown that he has the means to form an intelligent opinion, derived from an adequate knowledge of the property in controversy and of its value; and a witness who only knows some of the values of adjoining lands is incompetent.—P. 69.

4. **Conveyances—Absolute Deed as Mortgage—Evidence—Admissibility.**

   In an action to have a deed absolute on its face adjudged a mortgage, it appeared that the consideration was $3,000, and a witness testified that at about the date of the instrument he was willing to loan $4,500 on the property. Held, that the court erred in excluding questions on cross-examination as to what witness had offered at that time for an interest in the property equal to the grantor's, and if in making the contemplated loan witness did not expect to have a judgment against the grantor satisfied; and in excluding an offer by defendant to prove that this same witness at such time stated that he could purchase grantor's interest for $4,000, and deduct therefrom his judgment. —P. 70.

5. **Appellate Practice—Equity Proceedings—Questions of Fact —Submission to Jury—Review of Instructions.**

   In an action in equity, it is discretionary with the court to submit questions of fact to a jury, and, as the verdict is advisory merely, the court may approve, disapprove, or modify the same; and, while it has been held that the instructions given in such cases are not subject to assignments of error, the reviewing

court may read them to ascertain if the trial court knew the law of the case, as well as to determine whether it took the right view of the evidence and of its legal sufficiency.—P. 72.

6. Conveyances—Absolute Deed as Mortgage—Evidence—Circumstances to Be Considered.

In an action to have a deed absolute on its face adjudged a mortgage, evidence that the grantee was obliged to borrow the entire consideration, and obtain surety to sign a note for the loan, is admissible as a circumstance to be considered in determining the issue.—P. 72.

*Appeal from the District Court of Boulder County. Hon. Christian A. Bennett, Judge.*

Action by McLane Smith against Della M. Butsch. From a judgment for plaintiff, defendant appeals, and plaintiff assigns cross-errors.

*Reversed and remanded.*

Messrs. DOWNER & HAWKINS, and Mr. RICHARD H. WHITELEY, for appellant.

Mr. NORTON MONTGOMERY and Mr. HORACE N. HAWKINS, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

This is an action to have a deed to lands, absolute on its face, adjudged a mortgage. Upon controverted issues of fact, the court submitted to a jury special interrogatories for its answers, which were in favor of the plaintiff, and afterwards, against defendant's objections, these findings were approved by the court and formed the basis of its decree that the instrument was a mortgage. From the final decree, made after the approval of the report of the referee who had been appointed to take an accounting, the defendant appealed to this court, and plaintiff has assigned cross-errors.

The rule as to the quality and quantity of proof by which a case of this sort must be established has

often been enforced in this jurisdiction. The language in which our own and other courts have formulated the rule is not always identical; but, whatever be the phraseology employed, it is agreed by opposing counsel that mere preponderance of evidence in favor of the party on whom the burden lies is not sufficient. The proof must be clear, certain, satisfactory, unequivocal, trustworthy and convincing, and some cases say, conclusive. In short, the case must be made out with that fullness and precision which is essential to a conviction in a criminal case —beyond a reasonable doubt.—*Whitsett v. Kershow,* 4 Colo. 419, 423; *Bohm v. Bohm,* 9 Colo. 100, 111; *Townsend v. Petersen,* 12 Colo. 491; *Armor v. Spalding,* 14 Colo. 302; *Perot v. Cooper,* 17 Colo. 80, 85; *Davis v. Hopkins,* 18 Colo. 153; *Fetta v. Vandevier,* 3 Colo. App. 419.

In *Davis v. Hopkins, supra,* Mr. Justice Goddard, in stating the doctrine, said: "To invoke equitable relief in this character of action, it is well settled that the evidence must be 'clear, certain, unequivocal and trustworthy,' and such as to establish the ground therefor beyond any substantial doubt." And with approval quotes from *Perot v. Cooper, supra:* "Such kind of evidence, whether documentary, circumstantial, or from the mouths of credible witnesses, may well be accepted as convincing beyond a reasonable or substantial doubt, unless there be material and reliable evidence to the contrary."

If we consider this case as made by the plaintiff himself, entirely disregarding for the moment the defendant's evidence, as plaintiff says some of the authorities warrant, and test it by this wholesome rule, it is doubtful if, under the most favorable view that can be taken, it comes up to the requirements. But as we shall, for reasons hereinafter given, remand the cause for a new trial, we shall try not to

embarrass the trial court, in case further proceedings be had, with comments upon the evidence which, in some particulars, may then be essentially different, further than such observations are rendered necessary in considering the assignments of error, the determination of which compels us to set aside the judgment.

First it may be said that, as the complaint sets up an equitable cause of action, and the reversal is to be ordered for substantial reasons other than insufficiency of the evidence, defendant's assignments of error aimed at the instructions, and motion for a new trial, and plaintiff's cross-errors, are not material to the present discussion.

We proceed, then, to examine some of the more serious and prejudicial rulings of the court made during the progress of the trial. McLane Smith, the plaintiff, is an elder brother of Della M. Butsch, the defendant. They are children of Marinus G. Smith, deceased. There were eight heirs, including the parties to this action, each inheriting an undivided one-eighth interest of the property of the Smith estate, subject to the payment of its debts. The plaintiff had recently before the death of his father voluntarily taken the benefit of the national bankrupt act, and had been discharged. Thereafter he borrowed about $1,900 of a bank in the city of Boulder, and gave to its president as security therefor a quit-claim deed upon his undivided eighth interest in his father's estate, and took back from the trustee a written defeasance whereby a reconveyance was to be made upon payment of the debt. In order to pay that and other debts, and to get money with which to begin or continue business, the plaintiff, after unsuccessful efforts in other directions, applied to his sister, as he says, for a loan, and as she says, made a proposition to sell to her his inherited interest.

The actual transaction between them was a conveyance by quit-claim deed, absolute on its face, by the plaintiff to the defendant of all his interest in his father's estate, which the defendant says was, as it purported to be, an absolute sale for $3,000, but which plaintiff says was intended as a mortgage to secure a debt.

It is sufficient further to say that, as to almost every material fact in the case, plaintiff and defendant in their testimony squarely contradicted each other, so that it was, as can readily be seen, highly important for each party to produce all matters which tended to corroborate his own, or weaken the other's, testimony. The widest latitude, compatible with salutary rules of evidence, ought to have been allowed to each party in cross-examining the other's witnesses, so that everything which legitimately bore upon the controversy and affected the interest, credibility and qualifications of the witnesses might be presented to the jury and court charged with the duty of ascertaining the truth of the respective contentions.

As has been said, the findings of the jury were approved by the court and formed the basis of its judgment. Plaintiff claimed $3,000 was a grossly inadequate consideration if the transaction was a sale, which defendant denied. The jury found that the value of the property at the time was $10,000, and this unquestionably was, and, if such was its value, ought to have been, a circumstance both with court and jury in their finding that the transaction was a mortgage instead of a sale.

Henry Drumm was called as a witness by the plaintiff for the purpose of establishing value. It is insisted by defendant that his qualifications as an expert were not shown, and his testimony as to value incompetent. Plaintiff's counsel admits that Drumm

was not called as an expert, and did not qualify as such; nevertheless he says his testimony was competent because, as a non-professional witness, he was properly allowed to give his opinion as to value by reason of his acquaintance with the subject-matter at issue, and to this proposition cites Rogers on Expert Testimony (2d ed.), § 150.

The opinions of persons acquainted with the value of property are sometimes received in evidence, although such knowledge may not be the result of any peculiar skill in the particular branch of business, and this upon the ground of necessity. But, as said by the author at section 152:

"Whenever it is desired to have the opinions of a witness on the subject of value, it is always necessary, whether the witness is offered as an expert or not, to lay some foundation for the introduction of his opinion, by showing that he has had the means to form an intelligent opinion, 'derived from an adequate knowledge of the nature and kind of property in controversy, and of its value.' "

There is no question that Drumm did not qualify as an expert, and it is entirely clear that his testimony as a non-expert was incompetent. In summing up his qualifications, to use his own language, he said: "I was familiar to a certain extent, that is, I know some of the values of property or of lands adjoining the estate, that's what I looked at more particularly, especially on University Hill beyond this estate and abutting upon this estate, that's what I made particular note of. I didn't make particular note of the values of other real estate beyond what I have mentioned." This falls far short of revealing that he had any adequate knowledge of this property, or its value, in the sense that his opinion of its value was worth anything whatever. As Drumm's incompetent opinion was the

only direct testimony as to such value, it necessarily was highly prejudicial to defendant.

If any further argument or illustration is necessary to show Drumm's incompetency and lack of proper qualification upon such an important question in this case, it is furnished by the fact that he swore that when plaintiff deeded this property to defendant it was worth from $15,000 to $20,000, although he admitted that at about that time plaintiff offered to sell it to him for from $5,000 to $8,000. It is also evident that Drumm's testimony was based in part upon the price paid for lots after the property of the estate had been divided and defendant's allotment was laid off into lots and blocks about a year later.

Mr. Reed was the only other witness called by plaintiff as to value, and he testified that it was impossible to give an intelligent opinion as to the value of an undivided interest in an estate not yet settled, unless he knew about its affairs, and the circumstances and conditions to which it was subject.

Mr. Coates testified as a witness for the plaintiff that about the time of this deal the plaintiff applied to him for a loan upon his interest in his father's estate, and wanted to borrow the sum of $4,500, which the witness was willing to lend. The primary object which plaintiff's counsel says he had in view was to show the improbability of defendant's testimony that plaintiff sold to her for $3,000 property upon which he could borrow $4,500. Counsel contends, however, that this is also some evidence of its value. Doubtless such use was made of it before the jury, and certainly plaintiff's counsel makes such claim for it in his brief. On cross-examination by defendant's counsel, Coates was asked if at or about the same time he was not offered an undivided 1-24 interest in the same estate for $1,000, being at the same ratio which the defendant claims she bought

plaintiff's interest. To this question plaintiff's counsel objected on the ground that nobody else could bind the plaintiff, and the objection was sustained. Counsel then attempted to pursue this inquiry upon the ground that, if such an offer had been made, it would tend to affect the credibility of the witness as to the amount of the loan, but the court stopped him. Defendant's counsel, still further pursuing the inquiry, and endeavoring to probe the conscience of the witness, the court, of its own volition, again stopped him upon the ground that it was not proper cross-examination. The defendant's counsel also sought to show in his cross-examination of this witness that the latter held an unsatisfied judgment against the plaintiff, and that if, as a matter of fact, he was willing to lend plaintiff $4,500 and take this property as security, he expected in the transaction to have this judgment paid. The court prevented defendant from pursuing the line of inquiry as was attempted. That this, as well as the other rulings, constituted prejudicial error, seems too plain for argument.

There was error, also, in refusing the offer of the defendant to show by the witness Hankins that plaintiff's witness Coates had said, after the plaintiff had applied to him for a loan, that he, Coates, could purchase plaintiff's interest in the estate for $4,000, and take out of the purchase price his unsatisfied judgment.

Bearing in mind that plaintiff and defendant were in irreconcilable conflict as to this transaction, it was of great importance to have every fact that legitimately bore upon it in any way brought to the attention of the court and jury. These questions were proper as affecting the credibility of the witness, as tending to show interest, and as explanatory

of a willingness to lend to plaintiff a larger sum than
that at which defendant claims the property was sold
to her.  If the plaintiff was permitted, as he was,
to get before the jury and the court the fact that
offers were made by Coates to lend plaintiff on his
property a larger sum than that for which defendant
says she bought, and such evidence was also used
on the question of value, then it was proper to prove
by this and other witnesses that offers of sale by
other heirs of fractional interests in the same estate
were made about the same time at the same propor-
tionate price at which she claims she bought.

In an action in equity, it is discretionary with
the court to submit to a jury for its findings ques-
tions of fact, but the verdict of a jury is advisory
merely, and the court may approve or disapprove
or modify the same.  The instructions which the
court may give to the jury for its guidance it has
been held are not subject to an assignment of error,
and we are not reversing this judgment because of
erroneous instructions.  While this may be true,
still a reviewing court may read them to ascertain
if the trial court knew the law of the case, as well
as to determine whether it took the right view of the
evidence and its legal sufficiency.  The charge of the
court to the jury and its various rulings upon evi-
dence during the progress of the trial convince us
that the court misconceived the legal effect and suf-
ficiency of the evidence, and misapprehended the
force and effect of certain circumstances shown, and
attempted to be shown, at the trial, which evidently
it entirely disregarded in approving the findings of
the jury.  For instance, at the trial defendant testi-
fied that she was not engaged in the business of lend-
ing money, and that, in order to buy, she was obliged
to borrow the entire purchase price from a bank and

obtain a surety to sign a note with her. The court was asked by the defendant to instruct the jury that if they believed this testimony to be true it was a circumstance to be weighed and considered by them in arriving at their verdict, but the court declined to give this, or any similar, instruction; although it specifically instructed the jury, at the request of the plaintiff, that if they found as facts various things to which there was evidence, such as inadequacy of price, and plaintiff's indigent circumstances, it was their duty to consider them as circumstances.

In its fifth instruction, the court said that if defendant was willing to take a quit-claim deed from Allison, instead of having the property first deeded to plaintiff, and by plaintiff to defendant, this would be a circumstance tending to show that defendant intended to take a mortgage. If this is the law, and there was evidence on which this charge is supposed to be founded, and there is grave doubt about it, for it would seem that plaintiff had first executed his own deed to defendant, and thereafter requested Allison to deed to defendant instead of plaintiff, then the court ought to have said further to the jury, or have considered when approving its findings, that if this willingness was shown by defendant after having obtained a deed to herself direct from plaintiff, and because the parties believed that was the proper way to release the Allison mortgage, such a circumstance would not have such tendency.

The findings and decree might not have been reached, had not these erroneous rulings occurred. The judgment, therefore, must be reversed, and the cause remanded for a new trial in harmony with the views expressed in this opinion.          *Reversed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.