No. 12,620.

HEIMBECHER *v.* CITY AND COUNTY OF DENVER.
(9 P. [2d] 280)

Decided March 7, 1932.

Mr. CON K. O'BYRNE, Mr. WILLIAM H. SCOFIELD, for plaintiff in error.

*In Department.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE City and County of Denver, a municipal corporation, formulated a plan to straighten the channel of the South Platte river, within the city limits, and to erect an embankment or dike along its banks to prevent flooding of the adjacent premises. Being unable to acquire by purchase all of the adjoining lands necessary therefor the city proceeded, under the eminent domain state statute, to acquire, among other tracts, several parcels of lands or lots owned by the defendant Heimbecher which were necessary to the completion of its proposed plan.

This is the second time that the Heimbecher case has been before us. On the first hearing the judgment of the district court, which approved the award of a jury to him, in the sum of $5,000 for the four parcels of land, including the soil to the center of the stream, was reversed for the reasons stated in our opinion which is reported under the title *City and County of Denver v. Tondall,* 86 Colo. 372, 282 Pac. 191. Upon retrial in the district court an award to Heimbecher by a jury in the sum of $7,000 as the value of the same four parcels, not including the bed of the stream, was approved by the trial court over his objection. He is here with this writ of error asking that such award be set aside as inadequate, and that another and third trial in the district court be ordered.

If the district court at the first trial assumed or held that Heimbecher's ownership of lots abutting on Platte river extended to the center of the stream, its judgment was not reversed because of that holding. The reversal,

as shown by our opinion, was expressly limited to the error of the trial court in approving a verdict manifestly excessive. We expressly refrained from expressing an opinion upon any other question of law or fact decided by the district court. Upon the second trial, final judgment of which is now under review, the same court, a different judge presiding, instructed the jury that Heimbecher did not own any lands or soil in the bed of the river abutting his lands and, therefore, suffered no damage with respect thereto by the proposed improvement, and refused to permit the jury to assess any damages based upon the asserted ownership. Because of such alleged error in restricting to the lot line Heimbecher's ownership of lots abutting the stream, instead of extending it to the thread of the stream, defendant's counsel say in their brief, forms the basis for the prosecution of this pending writ of error. Indeed, we think counsel for defendant might have added, what is the logical conclusion of what he does say, that if the trial court was right in such holding, all other questions of law or fact attempted to be raised by him at this time may be disregarded, for their resolution either way would not control or affect our decision upon this review.

Notwithstanding this statement of counsel, he has not restricted his argument to the controling question in the case, but complains of rulings of the trial court upon minor matters which in our view require no consideration. From the foregoing it is apparent that defendant's chief, indeed, his only ground for relief, if he has any, is that the trial court held that ownership of his lots bordering on Platte river does not extend to the thread of the stream. The parties themselves are in accord that at the common law the general presumption is that a conveyance of lands bounding on a street or highway or a nonnavigable stream, like Platte river, carries the fee to the center thereof. It is also the general common law rule that the owner may convey the adjoining land without the soil thereunder. *City of Denver v. Pearce,* 13

Colo. 383, 22 Pac. 774, 6 L. R. A. 541; *Hanlon v. Hobson,* 24 Colo. 284, 51 Pac. 433, 42 L. R. A. 502. Both of these cases recognize the existence in Colorado of the general common law rule and the noted exception thereto. The Pearce case is an example of the exception to, while the Hobson case is a specimen of, such general rule. The source of Heimbecher's title to these lots is a quitclaim tax deed. They are a part of and included in Fletcher's West Side Addition which, at the time of filing the plat thereof, was within the town of South Denver. Some years later by annexation proceedings they were annexed to and became a part of the City and County of Denver. It should here be stated that these lots in question have but little intrinsic value as such. Heimbecher, their owner, is engaged in the sand and gravel business and these lots are of value to him largely, if not altogether, for the gravel and sand that the river flow continuously carries down from the mountains and deposits in the bed of the stream. The only use that Heimbecher has ever made of the lots is the removal from the river bed of this sand and gravel which he sells and disposes of to builders and others who have use therefor. From the time the city limits were extended to include the town of South Denver, the City and County of Denver has continuously assumed and exercised ownership and control of the river and the river bed and has not permitted any owner of lots or land bordering on the river to excavate thereon and remove sand or gravel therefrom without its express permission. When Heimbecher became the owner of the land he applied to the city for permission to remove sand and gravel from the river bed opposite his lands and the city gave him permission to do so under the regulations which it prescribes in such cases, and from that time until this condemnation suit was brought, whatever sand and gravel he has excavated and removed from what he claims in the river bed as a part of his premises, was with the express permission and by the authority of the city, and, so far as the record shows, Heimbecher never

made or asserted any claim of ownership in the bed of the stream until he filed his answer in this proceeding. The city claims title and ownership of the river bed both by common law and a statutory dedication. Whether such ownership by the city was thus acquired, the exigencies of this case do not require us to determine. Likewise we do not find it necessary to determine whether the river bed belongs to the city by statutory or common law dedication of the bed of the stream by the owner of the lands in which these lots are situate. If it be true that the trial court's instructions to the jury at the second trial, that title to these lots did not extend to the center of Platte river, is, as a matter of abstract law, erroneous, this record does not require us to reverse the judgment for such directions as we now proceed to demonstrate.

During the course of the trial below the defendant's counsel addressed the court in the following language: ''I think, your Honor, when the City takes these parcels [describing them] that they merely take the parcels. I think that I was wrong in the last trial, in having Judge Calvert instruct the jury that the City also took the land in the bed of the river, because the rule of ownership to the center of the stream, by virtue of the ownership of the bank of the stream, *is only a rule of construction, or matter of intent,* but where the taking is *in invitum,* as where the city takes the property, it takes merely the land within the lines indicated on the map there, no question of intention arises.''

Counsel also at another time during the course of this, the second trial, said: ''At the prior trial of this case I believe I led Judge Calvert into a little error. I had Judge Calvert instruct the jury that the city by taking the parcels [describing them] also took whatever rights he had in the bed of the river along with those parcels. The general rule is that those rights in the bed of the stream, whatever they are, are added to the tracts by virtue of a matter of construction, the intention of the grantor to convey them; he conveys the land on the bed

of the stream, but in the case of a city condemning, there is no question of intention at all—no question of intention by the property owner as to what he intends to convey, the city just takes it.''

There may be some ambiguity or uncertainty in this language, but there is no question but that the defendant's counsel thus induced the judge then presiding at the second trial to give the jury an instruction which he now says is wrong, that defendant's ownership of the parcels of land involved in this action did not extend to the center of the stream. At this second trial counsel also in effect said to the trial judge that the general common law rule was inappropriate to the pending condemnation suit by the city. The defendant's counsel, in making such statements to the trial court, unquestionably was the cause of, or contributed to, the giving by the court of its instruction to the jury that defendant's ownership did not extend to the middle of the stream. Even if it is erroneous, it is not now available to the defendant on this review, because defendant, himself, by his counsel may not avail himself of an alleged error which he induced the court to commit. It would be a travesty on justice and manifestly unfair to permit a counsel upon review to question the correctness of an instruction which he indicated to the trial court was proper.

It is, of course, not of any controlling importance here, but it is significant, that at the first trial the jury, which was instructed that defendant's title extended to the center of the stream, made a smaller award as to the value of defendant's four parcels of land than the jury on the second trial made of the same parcels based on ownership only to the bank of the stream. If we are right, as we think we are, in this holding that defendant may not now be heard to complain that the trial court erred in restricting defendant's ownership to the bank of the river, it is wholly immaterial whether the naked legal title to the bed of the stream is still in Fletcher or whether Fletcher dedicated the bed of the stream to the

city. In such a case as this no such damages are claimed, but, if they were, none could be granted to Heimbecher by reason of any injury to his business. He has had two trials before a jury. We think at the last trial ample compensation was awarded to him for the value of the lots which were taken for the city improvement, and damages, if any, which he may have sustained as to his remaining lots or property not taken, cannot be recovered by him in any event for the reasons which we have already given.

We think that upon this record other and substantial grounds might be given for the affirmance of the judgment, but in view of our conclusions above stated, there is no necessity for stating them. In the estimation of the jury ample compensation was given to the defendant for all the property which the city acquired in this condemnation proceeding. There is no merit in any of the defendant's assignments of error. The judgment is therefore affirmed.

MR. CHIEF JUSTICE ADAMS, MR. JUSTICE BURKE, sitting for MR. JUSTICE ALTER, and MR. JUSTICE HILLIARD concur.