No. 14,565.

City and County of Denver *v.* Lyttle.

(103 P. [2d] 1)

Decided April 22, 1940. Rehearing denied June 3, 1940.

158

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYS, Mr. E. L. FUNDINGSLAND, for plaintiff in error.

Mr. HORATIO S. RAMSEY, Messrs. ALTER & UPTON, for defendant in error.

*En Banc.*

MR. JUSTICE BAKKE delivered the opinion of the court.

PLAINTIFF in error, plaintiff below, instituted condemnation proceedings to acquire the farm of defendant in error, comprising 480 acres, for use as part of a bombing field auxiliary to the Air Corps Technical School east of Denver. The determination of the value of the farm was submitted to a jury which fixed it at $8,434, or approximately $17.50 an acre. Judgment was duly entered on the verdict, to reverse which the case is here on a writ of error. Reference will be made to plaintiff in error as the City, and to defendant in error as the owner, or Lyttle.

The City's assignments of error may be summarized in the following: 1. Five of the owner's witnesses were not qualified to testify as to the value of the land condemned. 2. The court should have admitted testimony regarding alleged voluntary sales of land to the City within the proposed condemned area. 3. An improper remark made by one of the attorneys for Lyttle should have been stricken. 4. City's tendered instruction number one should have been given.

1. The five witnesses whose competency and qualifications are challenged are Ruggles, Kidder, Davis, Woodworth and Hall, who may be personalized briefly as follows: Ruggles was a farmer and dairyman. He owned and had lived on his farm—which is located about five miles from the land here in controversy—since 1921. He had been employed at various times by Lyttle during the harvest period and had aided in the construction of some of the improvements on the place. He testified that he was familiar with the land and improvements on the Lyttle place, but admitted that his knowledge of sales in the community was derived from hearsay. He further testified that the Lyttle farm, improvements, and growing crops, were worth $12,000. Kidder had been in the real estate business in Colorado for twenty-five years, during the last ten of which he was engaged in farming in Adams and Arapahoe counties. He testified that he knew the value of the Lyttle

farm and that $9,600 was a fair price. Davis had oper-
ated a bank at Parker for some time. He testified that
his bank did not make farm loans, but that he was
familiar with the Lyttle farm, and that about one hun-
dred acres under cultivation was worth $30.00 an acre;
that one hundred acres of good soil, capable of cultiva-
tion, was worth $27.00 an acre; that two hundred eighty
acres of grazing land was worth $15.00 an acre, and that
the farm taken as a whole with the springs and build-
ings was worth $10,000. Woodworth had lived at Parker
for five years and had been engaged in farming, truck-
ing, and the gas and oil business. He testified he had
transported two thousand bushels of wheat from the
Lyttle place in 1937, and that he had recently purchased
a farm in that vicinity for which he had paid $20 an
acre without improvements. He further testified that
the Lyttle farm, including improvements, was worth
$10,850. Hall had been a resident of Parker for eighteen
years, where he had been employed by a hardware and
lumber company, and later owned and operated a store
and trucking business of his own. He had engaged in
farming, but not in the state of Colorado. He testified
that he based his opinion as to the value of the Lyttle
farm upon his general knowledge of the neighborhood,
productivity of the soil, and the sale and transfer of
land in that community that had taken place during the
last eighteen years. His testimony was that the Lyttle
farm was worth $10,146.47. The average of these five
estimates is $10,519.29.

██ The first question then is: Does the above resumé
of the testimony of these men show affirmatively that
they were not qualified to testify as to the value of
Lyttle's land? We think not. Counsel for the City con-
cede the applicability of the following rule: "Whenever
it is desired to have the opinions of a witness on the
subject of value, it is always necessary, whether the
witness is offered as an expert or not, to lay some foun-
dation for the introduction of his opinion, by showing

that he has had the means to form an intelligent opinion, ''derived from an adequate knowledge of the nature and kind of property in controversy, and of its value'." *Butsch v. Smith,* 40 Colo. 64, 90 Pac. 61, and *Hoover v. Shott,* 68 Colo. 385, 189 Pac. 848, the authors of both opinions quoting from Rogers on Expert Testimony (2d ed.), §152.

■ Another applying rule, which also is conceded by counsel for the City, is: "Whether a witness called to testify to any matter of opinion, has such qualifications and knowledge as to make his testimony admissible, is a preliminary question for the judge presiding at the trial; and his decision is conclusive unless clearly shown to be erroneous in matter of law." *Hoover v. Shott, supra,* quoting from the case of *Stillwell & Bierce Mfg. Co. v. Phelps,* 130 U.S. 520, 9 Sup. Ct. 601, 32 L. Ed. 1035.

■ The only authority in this jurisdiction cited by counsel for the City, the announced principle in which they seem to feel was violated, is the case of *Loloff v. Sterling,* 31 Colo. 102, 71 Pac. 1113, a proceeding for condemnation of a reservoir site, in which the judgment was reversed. However, when we consider that the reversal was ordered for the reason that it was error to refuse to permit the landowner, who had qualified as an expert, and had intimate knowledge of the character of the soil, to testify as to probable damage from seepage, it becomes at once apparent that that case is not authority for excluding the testimony of the five witnesses here.

It is a matter of common knowledge that there have been few free and open sales of real estate in the rural areas in the last few years, and, consequently, there is no sales-basis for determining a market value at a given time. However, evidence of sales is not the only criterion for determination of value. We have held that, "Any reasonable future use to which the land may be adapted or applied by men of ordinary prudence and judgment may be considered in so far * * * as it may

assist the jury in arriving at present market value." *Wassenich v. Denver,* 67 Colo. 456, 466, 186 Pac. 533; *Denver Joint Stock Land Bank v. Commissioners,* 105 Colo. 366, 98 P. (2d) 283, 286.

Witness McMillan, whose testimony is not challenged, stated that Lyttle's farm was worth $8,360, which amount was only $36 less than that found by the jury.

2. Did the court err in excluding evidence of offers to sell and certain sales made in the community at about the same time? This evidence was given by certain individuals—one to sell three sections of land at $7 an acre; another ten thousand seven hundred twenty acres, at the same price, and an actual sale at $6.90 an acre. The court did not err in excluding this testimony, even conceding it related to land within the area to be condemned, and that the offers and sale were made after all negotiations with the federal government had been completed, and the City had adopted its condemnation ordinance. It was a matter of common knowledge that the land would be condemned, and the offers were made shortly prior to the time of the institution of these proceedings. Both sides concede that there are two lines of authority on the proposition and that the majority rule is against the admissibility of such evidence. 2 Lewis on Eminent Domain (3d ed.), p. 1147, §667; 20 Am. Jur. §381. We are not persuaded that there is an occasion to depart from the majority rule, and, therefore, concur in the action of the trial court in excluding testimony regarding these offers of sale. Evidence of five sales by the Federal Land Bank of lands which it had obtained under foreclosure proceedings was admitted without objection. These sales-prices varied from $6.25 an acre to $12.60 an acre.

3. The alleged improper remark of one of Lyttle's attorneys made in the presence of the jury, concluded as follows: "And every man in that neighborhood knew if he did not sell he would be condemned." Taken by itself the remark is of doubtful propriety, but in con-

nection with accompanying statements, and considering the circumstances in which it was given, we cannot believe that it influenced the jury particularly. Our opinion in the case of *McNichols v. Denver*, 101 Colo. 316, 74 P. (2d) 99, wherein we approved the action of the City to procure the bombing field, had been announced a few weeks prior to this litigation, which announcement had been given general publicity, and it undoubtedly was true that every landowner in the area did know of the inevitable condemnation if he refused to sell. Furthermore, it must be noted that counsel who made the statement said that the basis of his argument was whether evidence of sales, or offers of sale, of land which would be subject to condemnation could be given. Under these circumstances, we do not feel that there was any prejudicial error in the court's refusal to strike the statement. It was not evidence, and the instructions contained the usual cautionary statement on this point.

 4. The court refused to give the City's tendered instruction No. 1 which reads: "In this case several witnesses have testified that the value of the premises herein involved was worth a certain amount to them. You are instructed that this is not the measure of value, but that you are to allow only the actual cash market value of said property and not what it is worth to any individual. Market value is defined by Instruction No. ........." No error resulted from the court's action in this regard. The instruction was not based upon a fair statement of the testimony given by the witnesses to whom reference is made, and its general purport was covered by the instructions given, to which no objection was presented. The tendered instruction is objectionable, too, because it singles out parts of the evidence which properly must be considered in its entirety.

Our conclusion is that this matter was fairly tried and that the record discloses no prejudicial error.

Judgment affirmed.

Mr. Justice Francis E. Bouck, Mr. Justice Otto Bock and Mr. Justice Burke dissent.

Mr. Justice Otto Bock dissenting.

I regret my inability to concur in the majority opinion. Evidence as to cash market value was important to determine the value of the land taken from the owner. At least three of his witnesses were not qualified, as appears from the record, to give such testimony. One of them was held not competent by the rulings of the trial court, but later, over objections by the city, was permitted, figuratively speaking, to reenter by the back door and give such testimony. The other two were truck drivers, who had done some hauling for the owner, and they also were not qualified under the rule laid down in *Butsch v. Smith,* 40 Colo. 64, 90 Pac. 61, in that their opinions were not derived from an adequate knowledge of the present value of the land in question. None of the cases cited in the majority opinion in support of this testimony involved cash market value in an eminent domain proceeding. It is doubtful whether they have any relevancy to the issues here. Timely objection was made to all of this evidence. It does not clearly appear that no prejudice resulted (*Loloff v. Sterling,* 31 Colo. 102, 71 Pac. 1113); in fact, it would appear otherwise. Under these circumstances, reversal is necessary. *Wassenich v. Denver,* 67 Colo. 456, 186 Pac. 533, is not relevant to the facts here. In that case the owner contended that he was entitled to the highest value that he might be able to obtain in the future by waiting for a better market which would result from a greater demand for such property, or waiting for a customer who would pay on the basis of the most advantageous use to which it could reasonably be applied. This, we held, was not the law, and we made the statement appearing on page 466, as follows: "In determining the present cash value the most advantageous use to which the property may rea-

sonably be applied may be considered. Any reasonable future use to which the land may be adapted or applied by men of ordinary prudence and judgment may be considered in so far only as it may assist the jury in arriving at the present market value. The owner is entitled to have considered the most advantageous use in the future to which the land may be reasonably applied, not with the view of allowing him for speculative or prospective damages or values, but only as such evidence may bear upon or affect or assist in arriving at the present market value." There is no contention here of any different future use of the land in question.

In *Denver Joint Stock Land Bank v. Commissioners,* 105 Colo. 366, 98 P. (2d) 283, our concern was over the petitioner's attempt to show benefits to the residue of the land, and the case has no relevancy to the facts here.

In my opinion, error was committed by the trial court in excluding evidence of certain sales made in the immediate vicinity of the land in question. It is asserted that this evidence was inadmissible because at the time of the sales it was common knowledge that the land would be condemned, and that the offers were made shortly prior to the institution of the suit in the instant proceeding. This is a matter of first impression in this jurisdiction. The general rule is stated in 43 L.R.A. 986, as follows: "It is the general rule that evidence of what the condemning party has paid for other land by private treaty is not admissible whether the lands are similar or not."

It may be conceded that this general rule, which has been in effect for a long time in some states, is followed by the courts of a majority of the others. There is, however, a respectable minority that have not adopted the rule. Moreover, the offered evidence did not partake of the nature of a "private treaty." "The fundamental basis upon which all rules of evidence must rest—if they are to rest upon reason—is their adaptation to the successful development of the truth." *Funk v. United States,* 290

U.S. 371, 54 Sup. Ct. 212, 78 L. Ed. 379. In *Curley v. Jersey City*, 83 N.J.L. 760, 85 Atl. 197, in rejecting the general rule, the New Jersey Court of Errors and Appeals has this to say (p. 762): "In the absence of extraordinary circumstances, we are unable to see, as a general rule, why private sales to parties having the right to condemn, do not come quite as near representing in their results true market value as do such sales made between parties neither of whom have this power. It is easy enough to imagine special circumstances, falling in such class, where the result in the price obtained is, because of such special circumstances, so clearly abnormal as to destroy the similarity which must exist in order that the evidence shall be admissible. In other cases where the special circumstances are not of sufficient importance to produce this result, they may, nevertheless, affect the weight of the evidence, and be used for that purpose before a jury. This is so whether the purchaser is or is not a party having the power to condemn."

The test whether such evidence is admissible or not is, Was it a voluntary sale, not induced by coercion or duress? This may be ascertained by the trial court in a preliminary hearing, before such evidence is submitted to a jury. If the court determines that the sale was voluntary, the evidence should be admitted; if not, it should be rejected. The application of such exception to the general rule will, in my opinion, result more nearly in the ascertainment of the correct present cash market value. In the instant case the city offered to introduce evidence, which was rejected by the court, that these sales of land immediately contiguous to the property in question were voluntary, the offers of sale originating with the owners of the property, and not with the city. In fact, it was the only testimony available to establish, from actual sales in the immediate vicinity, the present cash market value.

In my opinion, the judgment should be reversed and the case remanded, with directions to grant a new trial.

Mr. Justice Francis E. Bouck and Mr. Justice Burke concur in this dissent.