## No. 14,709.

CITY AND COUNTY OF DENVER *v.* QUICK ET AL.

(113 P. [2d] 999)

Decided May 19, 1941.

112

Mr. MALCOLM LINDSEY, Mr. FRANK L. HAYS, Mr. E. L. FUNDINGSLAND, for plaintiff in error.

Mr. HAROLD H. DAVIES, Messrs. IRWIN, O'CONNELL & ZARLENGO, for defendants in error.

*En Banc.*

Mr. Justice Knous delivered the opinion of the court.

Plaintiff in error city here seeks a reversal of a judgment awarding compensation to defendants in error for 800 acres of agricultural lands actually taken in their entirety by the city in the exercise of its right of eminent domain and allowing damages resulting therefrom to a 160-acre residue not taken. Two separate actions to condemn such tracts were consolidated for trial and the causes are presented here on one record. The errors assigned are directed to the alleged incompetency of certain witnesses for defendants; to the refusal of instructions tendered by the city; to the admission and rejection of evidence; and to the verdict fixing the award, which is said to be grossly excessive.

The contention concerning the competency of defendants' witnesses Prebble and Hanson, grounded upon the alleged insufficiency of their qualifications, as disclosed, to testify on the issue of the market value of the lands taken, are generally analagous to those raised by the city and resolved adversely to it in *Denver v. Lyttle,* 106 Colo. 157, 103 P. (2d) 1. We deem our pronouncement on the subject in that case to be conclusive of the question in the present proceeding.

The district court did not err in refusing to give the three instructions tendered by the city. The first would have informed the jury that "speculative or *prospective* uses" were not to be considered in determining the present value of the lands taken. Our decisions establish that any reasonable future use to which the land may be adapted or applied by men of ordinary prudence may be considered by the jury in arriving at the present market value. *Denver v. Lyttle, supra; Denver Joint Stock Land Bank v. Commissioners,* 105 Colo. 366, 98 P. (2d) 283; *Wassenich v. Denver,* 67 Colo. 456, 186 Pac. 533. The second tendered instruction, if given, would have advised the jury that evidence relating to any sub-irrigation of the lands appropriated should be

disregarded in determining their market value. This condition, if the jury found that such existed, would naturally bear on the adaptability of the land to agricultural purposes and its productive capacity as such, which, under the authorities hereinafter cited, was proper of consideration with other factors in determining the market value of the land. The rule applicable where it is shown that the land taken has a well established market value, the subject of the third instruction, was covered in a more comprehensive way in an instruction given by the court to the jury and, hence, the rejection of the one tendered was not erroneous. Tendered instructions numbers 2 and 3, also were objectionable in that they singled out and gave undue prominence to particular evidence to the exclusion of other important facts. See *Denver v. Lyttle, supra; Trumbull v. Erickson*, 97 Fed. 891, 38 C.C.A. 536; *Carpenter v. Connecticut General Life Ins. Co.*, 68 F. (2d) 69.

■ Over the objection of the city one of the defendants was permitted to testify that in 1936 and 1937, the two years preceding the institution of these actions, he received between $3,000 and $3,500 from the sale of cattle cared for and fed on the properties involved. The same witness testified that during the three years immediately antecedent to the condemnation, "in the neighborhood of $45.00 or $50.00 a month" had been realized from the sale of dairy products secured from livestock kept on the premises. The city asserts that the reception of this testimony was violative of the general rule, that evidence of profits derived from a business located on the land taken is not properly admissible as a basis for computing the market value of such property in condemnation proceedings, and its counsel cite in support of the contention: *Denver v. Tondall*, 86 Colo. 372, 282 Pac. 191; *Heimbecher v. Denver*, 90 Colo. 346, 9 P. (2d) 280. See, also, 18 Am. Jur., p. 988, §345; Orgel on Valuation under Eminent Domain, p. 529, §161; Nichols on Eminent Domain (2d ed.), vol. 2, p. 1171,

§446; Lewis on Eminent Domain (3d ed.), vol. 2, p. 1271, §727. The fallacy of the argument on behalf of the city on this point does not lie in the rule itself, which, it is stated in American Jurisprudence, supra, has been followed with remarkable unanimity in American Jurdisdictions, but emanates from *its* inapplicability to the situation under consideration. This misconception, in our view, arises from the city's failure to distinguish between income from property and income from business conducted upon the property, which distinction furnishes the criterion for the applicability of the rule. Such limitations and the effects thereof on the admissibility of evidence of income are well delineated in Nichols on Eminent Domain (2d ed.), vol. 2, p. 1173, in the following words: "It is * * * well settled that evidence of the profits of a business conducted upon land taken for the public use is not admissible in proceedings for the determination of the compensation which the owner of the land shall receive; but evidence of the character and amount of the business conducted upon the land may be admitted as tending to show one of the uses for which the land is available. When land is used by its owner for agricultural purposes, the same elements enter into the result as when it is used for commercial purposes, but to a less degree, and the actual return is in such case some evidence of the value of the land. It is accordingly sometimes held that the value of the annual crops or the income derived from a farm is admissible as bearing upon the value of the land." In support of the statement contained in the last sentence the author cites *Farmers' Res. & Irr. Co. v. Cooper,* 54 Colo. 402, 130 Pac. 1004. This principle is also recognized in *Hoover-Benninghoff v. Palisade,* 48 Colo. 64, 67, 108 Pac. 983. See, also, 20 C.J. page 790, §240 (where the Farmers' Res. & Irr. Co. case also is cited); Jones on Evidence (2d ed.) vol. 2, p. 1311, §700, and *Weyer v. Chicago & N. W. R. R. Co.,* 68 Wis. 180, 31 N.W. 710. Under the record it is here certain that the lands were

used by the owners for agricultural purposes and the income in question was derived *from the use of the property itself*. The evidence thereof was offered and expressly admitted as proof bearing on the productiveness of the land taken and its adaptability to livestock husbandry and not as a basis for the determination of consequential damages for the destruction of a business as such. Thus, in the light of the principles above stated, the district court did not err in receiving the challenged testimony.

■■ The court did not transgress in permitting one of the defendants to testify that until some four or five years previous to the trial he had grown alfalfa, cutting about a ton and a half per acre per year, upon a portion of the lands for a long period of time. We assume it to be a matter of common knowledge that alfalfa can only be grown on a superior type of dry farming land. At the trial the objection was that this evidence was too remote to be of probative value; while here it is argued that it is objectionable as showing only speculative value. Since conjecture is the vice which bars evidence of speculative uses, we are unable to understand how this objection can apply to proof of what has been successfully accomplished on the land in the past. The evidence was not received to prove a separate item of damages, but only as bearing on the market value of the land. For such purpose it is well established that the land owner may show the productive character of the land and the quantity of crops produced thereon. *Farmers' Res. & Irr. Co. v. Cooper, supra; Hoover-Benninghoff v. Palisade, supra.*

■■ Counsel for the city complain that its expert witnesses were not permitted to testify as to the amounts of the considerations recited in recorded deeds between third persons covering property in the vicinity allegedly similar to that of defendants, or as shown by the revenue stamps affixed thereto, or gained by them from conversations with third parties who were not

witnesses, as partially showing the basis upon which such witnesses arrived at their estimates of the market value of the lands taken. This contention is without merit. "Proof of sales must be made by witnesses testifying directly to the facts, not by the consideration recited in deeds between third parties." Lewis on Eminent Domain (3d ed.), vol. 2, page 1143, §662. See, also, *Central R. R. Co. v. State Tax Dept.*, 112 N.J.L. 5, 169 Atl. 489; *Rose v. City of Taunton*, 119 Mass. 99, and *O'Hare v. Chicago, etc., R. R. Co.*, 139 Ill. 151, 28 N.E. 923. "A witness who has given his opinion as to value may state the reasons for his opinion, and he may of course state as such reasons any circumstances which he would be allowed to give in evidence as independent facts; *but he cannot under the guise of fortifying his opinion state to the jury any facts which, either because the facts themselves are not relevant or because his knowledge of the facts is entirely based on hearsay, are themselves inadmissible.*" Nichols on Eminent Domain (2d ed.), vol. 2, p. 1188, §453.

In our view the city was not prejudiced by the admission of certain testimony concerning uninvolved noncontiguous lands in sections 19 and 20 which, although belonging to the wife of one of the defendants, had been used in connection with the farm lands taken. The evidence simply described the nature and the character of the land and no opinions were expressed as to its value nor was there any showing whatsoever that any diminution in their value transpired by reason of the taking of the 800 acres of defendants' land. Further, the instructions by limiting the compensation to be allowed to defendants to that arising from the 800 acres actually taken and the severance damage to the 160 acres located in section 28, effectively excluded from the jury's consideration any questions of damages pertaining to noncontiguous lands in sections 19 and 20.

We are unable to agree with the contention of the city that the verdict was so manifestly excessive in

amount as to make it apparent that the jury was influenced by passion or prejudice in its rendition. Defendants' witnesses placed an average value of $25,592 on the land taken and $1,150 damage to the residue. The city's witnesses both agreed on exactly $8,200 for the land taken and one of them estimated the damage to the residue at $500. The jury allowed $15,100 for the land taken and $800 for damage to the residue. The theory that a portion of the award may have been based on sentimental grounds because of evidence that a family burial plot was located on the premises which were being condemned for use as a bombing field, is dissipated by the circumstance that the jury was instructed that "any sentimental reasons which respondents may entertain respecting the cemetery located on the land," are not to be considered in arriving at the market value of the property.

The judgment is affirmed.

MR. CHIEF JUSTICE FRANCIS E. BOUCK, MR. JUSTICE OTTO BOCK and MR. JUSTICE HILLIARD dissent.