Opinion by
Mr. Justice Pringle.
Defendant in error State Highway Commission of Colorado, hereinafter referred to as the Commission, filed a petition in condemnation whereby it sought to acquire a 20 acre strip of land which would become a portion of the new Interstate Highway system.
The acreage sought to be condemned was a part of the Sky Ranch Airport, a tract of land comprising 852 acres located in Adams County, approximately 5% miles east of the northeast edge of the Denver Airport facility at Stapleton Field. The airport is owned by the plaintiffs in error, L. W. Mack, Sr., and L. W. Mack, Jr., hereinafter referred to as the Macks or the Respondents.
*302 Sky Ranch is a private airport which has three runways so patterned as to constitute approximately a right triangle. The airport has its own water and sewage system, electricity and power, natural gas tap, and private facilities for flight training and aircraft maintenance for military and private personnel. Located at Sky Ranch are the Universal Aircraft Industry and Airplane Parts Manufacturing facilities and the headquarters of Vest Aircraft and Finance Co.
The 20 acre strip of land which the Commission sought to acquire traverses the southwest corner of the airport and severs from the remainder of the Sky Ranch property a triangular portion of land of approximately 14 acres. The taking of the 20 acre strip would separate the airport facility from direct frontage on the Union Pacific Railroad tracks which presently run along a portion of the south quarter of the Sky Ranch. The construction of the new highway would also sever an entrance road which now connects the airport with an existing two lane road and substitute therefor an access road which would intercept the Interstate Highway at an interchange to be located a little less than a mile west of the airport.
The Macks, in their answer, sought to have the condemnation petition dismissed, alleging as a reason therefor that the land to be condemned was already dedicated to a public use and could not therefor be condemned. At a separate hearing this defense was stricken. Thereafter the issue of damages was tried to a jury of six freeholders who returned a verdict finding the value of the land actually taken to be $20,013 and the amount of damages to the remainder of the property to be $13,630. The jury was instructed by the court to return a verdict that there were no benefits to the remainder of the property owned by Respondents. The Macks now seek review by writ of error.
It is contended that the property involved cannot be condemned for highway purposes because the property *303 is already subject to an existing public use. We do not agree.
Whether a privately owned airport may or may not be considered as being devoted to a public use does not here concern us, for it is clear that subject to rare exceptions, it is the general rule that there are no limitations on the type of property that may be acquired by the state through condemnation proceedings for highway purposes. Welch v. Denver, 141 Colo. 587, 349 P. (2d) 352. The determination by the state of the necessity for the particular taking in the absence of a showing of bad faith is final and conclusive. Lavelle v. Town of Julesburg, 49 Colo. 290, 112 Pac. 774; Denver v. Board of Comm’rs of Arapahoe County, 113 Colo. 150, 156 P. (2d) 101; Welch v. Denver, supra.
Respondents contend that the trial court excluded testimony of their appraiser, Hart, to the effect that the location of the highway eliminated the possibility of operating a spur track from the Union Pacific Railroad to the residue at a future time. A careful reading of the transcript of the testimony convinces us that the court did not exclude such evidence. Near the close of his testimony, Hart said that the “whole operation is seriously damaged by the removal of the trackage.” He went on to say that the marketability of the property was reduced by the removal of the trackage. Objection was then made to any testimony by Hart as to damage to the manufacturing plant on the land on the grounds that no siding was actually being taken. The objection was sustained.
The ruling of the court was limited to the scope of the objection and was operative only to prevent Hart from testifying further as to specific damages to the manufacturing plant then on the premises. There was no actual siding on the premises at the time of trial, and no siding was being taken. What was being taken was the possibility of direct access from the airport property to the railroad track. Counsel asked no further *304 questions concerning the loss of future access to the railroad, but there had been testimony given earlier by Hart that the highest and best use for this land was industrial and that land for industrial purposes without access to a railroad was worth less than land with such access. This testimony was not objected to nor stricken. In concluding his testimony on direct examination, Hart stated that by virtue of the conditions which would exist after the building of the highway, the remainder of the land would be diminished in value by $250 per acre. The jury had been clearly apprised that one of the conditions which would exist after the taking was that the residue of the land would no longer be adjacent to the railroad. Hart, on cross examination, clearly pointed out to the jury how access from the residue to the railroad would be affected by the taking. We find no error in the court’s ruling.
The Macks next contend that the trial court erred in striking testimony as to the cost of replacement of the airport’s north-south runway. Conflicting evidence was presented concerning the effect of the proposed highway upon the flight pattern of aircraft landing and taking off from this runway. Respondents’ expert witness Miller testified that in his opinion a new highway would seriously affect the use of the north-south runway and that to restore the airport to its present operation after the new highway was built would require a new north-south runway to be built at a cost of $112,930. Thereafter, Hart testified that the cost of a new runway would be $115,000 and that, since, in his opinion, the old runway had some partial value, it would take $86,250 to make the Macks “whole.” The court did not strike Hart’s testimony as to what it would take to make the Macks whole, but only that portion of the testimony which related to the construction of a totally new north-south runway at a different location.
We have stated many times that the measure of damages to the residue of property after a condemna *305 tion is the diminution of the market value by reason of the taking. Farmers’ Reservoir & Irrigation Co. v. Cooper, 54 Colo. 402, 130 Pac. 1004; Fenlon v. Western Light & Power Co., 74 Colo. 521, 223 Pac. 48; Wassenich v. Denver, 67 Colo. 456, 186 Pac. 533. Respondents concede that this is the law but contend that the evidence concerning construction of a new north-south runway was admissible to explain how the witness arrived at the difference in market value before and after the taking. The difficulty with Respondents’ position is that there was no testimony adduced by them to show the difference between the market value of the residue as an airport before and after the taking. Hart’s testimony that the market value of the land was $250 an acre less after the taking was based on his opinion that the highest and best use of the property was for industrial purposes, and for such purposes the alleged loss in functional ability of the north-south runway could have no relevance. Neither Miller nor Hart testified to the diminution of the market value of the residue as an airport. Elements of damages such as the cost of restoration of property, estimate of replacement value, and related items are admissible only if they would have a bearing on and influence opinion as to value. Dandrea v. Board of County Comm’s, 144 Colo. 343, 356 P. (2d) 893.
In the absence of evidence of the market value of the residue as an airport by reason of the construction of the highway, it was entirely proper for the court to strike the evidence relating to the construction of a totally new north-south runway at a location different from its present location on the airport property. Denver v. Bayer, 7 Colo. 113, 2 Pac. 6; Mustang Reservoir, Canal & Land Co. v. Hissman, 49 Colo. 308, 112 Pac. 800.
We find no merit in Respondents’ next contention that the court erred in failing to strike the testimony of the Commission’s witness, Shumate, regarding the effect of the proposed highway upon the use of the north-south runway. Whether a witness is qualified to *306 give opinions in a particular field rests in the sound discretion of the trial court and the court’s rulings thereon will not be disturbed in the absence of a gross abuse of discretion. Denver v. Lyttle, 106 Colo. 157, 103 P. (2d) 1; 32 C.J.S. Evidence, §458 (b), p. 99; Jones, The Law of Evidence (5th ed.), Vol. 2, §414. See also Wigmore, Evidence (3d ed.), §561, p. 641 ff.
Shumate is a licensed pilot with 9,000 hours in the air. He is also a professional engineer with 32 years of engineering experience and testified that he had some limited experience in design and construction areas. He had flown aircraft in and out of the Sky Ranch Airport and was familiar with Federal Aviation Agency regulations. No objection was made to specific questions asked of Shumate concerning his opinion on the effect of the proposed highway on the takeoff and landing pattern of aircraft. After all the testimony had been concluded a motion was made to strike all of Shumate’s testimony. Under the circumstances here we cannot say that the trial court grossly abused its discretion in refusing to strike the testimony of Shumate.
 Finally, Respondents contend that the trial court erred in giving Instruction No. 6 and in refusing to give their tendered Instructions No. 12, 13 and 14. Instruction No. 6 stated in pertinent part that the damage to the residue £ * * * is to be measured by the present difference between market value of the residue before taking the right-of-way and after taking of the right-of-way. All damages that are the natural, necessary and reasonable result of the taking should be considered insofar as they result in a decrease in market value of the residue. * * * ”
Respondents’ contention at the trial was that the instruction did not state the proper measure of damages to the residue and they contend here that the instruction is erroneous because it does not advise the jury that general benefits to the land by reason of the improvement are not to be considered by them in arriving *307 at the market value of the residue after the taking. The instruction states in general terms the law with respect to the measure of damages to the residue after taking, as we have enunciated it many times in this state. Mulford v. Farmers Res. & Irrigation Co., 62 Colo. 167, 161 Pac. 301, Farmers Res. & Irrigation Co. v. Cooper, supra; Denver v. Tondall, 86 Colo. 372, 282 Pac. 191; Wassenich v. Denver, supra. It is true that general benefits which incur to the residue by reason of the improvement may not be considered by the jury in arriving at the market 'value of the residue after the taking, Boxberger v. Highway Commission, 126 Colo. 526, 251 P. (2d) 920; San Luis Valley Irrigation Dist. v. Noffsinger, 85 Colo. 202, 274 Pac. 827, but there was no evidence in this case that any of the appraisers had considered general benefits in arriving at their opinions. Moreover, the court had directed the jury that there were no benefits to the residue of the property as a matter of law.
As part of their argument in connection with the refusal of the trial court to instruct the jury that it should not consider general benefits in arriving at its determination of the damages to the residue Respondents point out that the trial court refused to give tendered Instruction No. 13 which specifically directed the jury not to consider any benefits derived by reason of the increased traffic resulting from the construction of Highway 70 adjoining the Respondents’ land. The Respondents cite as authority for their position Boxberger v. Highway Commission, supra, where the refusal to give a similar instruction was held to be error. We do not consider Boxberger as controlling here. The question there was whether increased traffic by reason of improvement of a road which was adjacent to the landowner’s property before the taking constituted a special benefit. Here by reason of the proposed improvement the respondents will gain access to and frontage on an interstate highway, a situation which could very well *308 increase the value of their specific land as an industrial site as contrasted to the general benefits to the community at large. See Nichols, Eminent Domain (3d ed.), Vol. 3, §8.6203, p. 45 ff. Moreover, no question of increased traffic was present here. The only benefits mentioned in the testimony at all were such benefits as might have resulted from gaining frontage on the interstate highway which the property would not have prior to the proposed construction. Even this factor, as we have said, was not considered by the appraisers in arriving at their estimates of value. There was no error in refusing to give Instruction No. 13 in view of the evidence in this case.
The matters contained in tendered Instructions Nos. 12 and 14 were, under the circumstances of this case, covered by the instructions given by the court and therefore it was not error to refuse the tendered instructions. Denver v. Lyttle, supra; Denver v. Quick, 108 Colo. 111, 113 P. (2d) 999.
The judgment is affirmed.
Mr. Chief Justice Frantz and Mr. Justice Sutton concur.