## THE COLUMBIA DELAWARE BRIDGE COMPANY v. CHRISTIAN H. GEISSE AND OTHERS.

1. Where a cause is tried by the court, without a jury, by the consent of parties, the court is substituted in the place of a jury, and its findings on questions of fact cannot be reviewed by writ of error.

2. The legislative grant of a ferry franchise is valid, although the grantee has not title to the landing places which are named as the termini of the ferry.

3. The grant by one state of a ferry franchise over a river, which is the boundary between it and another state, is valid, and it is not necessary to the validity of such a grant that there be concurrent action by both states, nor that the grantee have the right of landing beyond the state by which the grant is made. His franchise, for that reason, may be less valuable, but it is good so far as his own property rights are concerned, or the jurisdiction of the state making the grant extends.

4. In an action to recover damages for the injuries suffered in the destruction of a ferry by the erection of a bridge, the income derived by the plaintiff from tolls received in preceding years is competent evidence to show the value of the franchise.

5. In such action, the rates of tolls fixed by the board of chosen freeholders, under the act concerning ferries (*Nix. Dig.* 337), certified by the clerk of the board, are competent evidence, although such rates were fixed for the ferry when the plaintiff worked it as such, before he had obtained a legislative grant of the franchise. The evidence was competent to show what the public authorities having power to establish the rates of ferriage considered as reasonable tolls for the ferry.

6. When a party excepts to the admission of testimony, he is bound to state his objection specifically, and, on error, he is confined to the objection so taken.

7. Agency, as a question of fact, may be proved by the acts, declarations, or conduct of the principal and agent, although the agent was appointed by power of attorney.

8. The plaintiffs were the owners of the franchise of a ferry over the Delaware river, from the town of C. to the opposite Pennsylvania shore, under a grant by the legislature of New Jersey. One D. was the owner of the landing on the Pennsylvania shore, and had a grant from the legislature of that state of the exclusive right of ferriage from that shore. By arrangement between the owners of the two franchises, a ferry was run between the two landings, for mutual benefit. The ferry was made valueless by the erection of the defendants' bridge over the river. In proceedings to recover compensation for

the injury to the ferry, under defendants' charter, *held*, that the action was properly brought by the plaintiffs, without joining the owners of the Pennsylvania franchise. There being no unity of estate in the several owners of the two franchises, the interest affected was several, and although the injury to each was due to a common cause, separate actions must be brought.

On writ of error to Warren Circuit.

Argued at February Term, 1875, before the CHIEF JUSTICE, and Justices DEPUE and KNAPP.

For the plaintiff in error, *J. G. Shipman.*

For the defendants, *Vanatta*, Attorney-General.

The opinion of the court was delivered by

DEPUE, J.    The bridge company was incorporated in 1839, for the purpose of constructing a toll bridge over the Delaware river, at the village of Columbia. (*Acts*, 1839, *p.* 151.)    By the 14th section of the charter, provision was made for compensation to the owners of ferries or fisheries that might be injured by the erection of said bridge, for any damages they might sustain thereby ; and in case the officers of the company, and the owners of such ferries or fisheries, could not come to an agreement on the subject, the damages were to be ascertained by three freeholders, appointed in the manner prescribed by the 9th section of the charter.

A bridge was erected by the company in 1869, and the plaintiffs, who are the heirs-at-law of Henry Geisse, deceased, applied for the appointment of freeholders to assess the damages, caused by the erection of the bridge, to a ferry across the river at Columbia, of which they claimed to be owners. The history of the proceedings antecedent to that now under review will be found in the reports of the previous litigations between these parties.    *The Columbia Delaware Bridge Co.* v. *Geisse*, 5 *Vroom* 268 ; *S. C.*, 6 *Vroom* 474 ; 6 *Vroom* 558 ; 7 *Vroom* 537.

An appeal having been taken by the defendants in error from the award of the freeholders, the cause came on for trial at the circuit, before a jury. The trial was begun before the jury, and after the testimony was closed, it was agreed that the question of damages should be submitted to the jury, and the remaining questions, both of law and of fact, should be submitted to and decided by the Chief Justice holding the circuit.

The jury having found the amount of the damages, and the other questions of fact having been found by the court, judgment was thereupon entered in the circuit in favor of the appellants for the damages assessed by the jury. Upon this judgment the respondents sued out this writ of error.

Errors have been assigned, on the finding of the court, of matters of fact. Such assignment must be disregarded. Where a cause is tried by the court without a jury, the court is substituted in the place of a jury, and its finding on questions of fact cannot be reviewed by writ of error. *Pelletreau* v. *Jackson,* 7 *Wend.* 471.

The ferry of the defendants in error was between a landing place, at the foot of Columbus street, in the village of Columbia, and a landing place on the other shore of the river, at Portland. They claimed to have become the owners of the ferry as heirs-at-law of Henry Geisse, deceased, to whom the franchise of a ferry at that place was granted by an act of the legislature of this state, passed on the 6th of March, 1856. (*Acts,* 1856, *p.* 140.) The legislative grant to Geisse was of the franchise to establish, keep up and maintain a ferry from *his landing,* at the foot of Columbus street, in the village of Columbia, in the county of Warren, across the Delaware river, to *his landing* on the opposite Pennsylvania shore; and other persons were prohibited from using the said river for the purpose of a ferry within the distance of one-half a mile above and below said ferry.

The court below held that the franchise with respect to which the plaintiffs below were entitled to claim damages, was derived solely from this legislative grant. Upon this

holding, the contention was, the ferries mentioned in the 14th section of the act incorporating the bridge company, were only such as were in existence as franchises conferred by legislative grant made prior to the passage of the defendant's charter. That question was set at rest by the decision of this court and the Court of Errors in the former litigation between these parties. In both courts it was held that the ferries mentioned in the defendant's charter were such as were in existence at the time of the erection of the bridge, although not in existence when the act of incorporation was passed. 5 *Vroom* 271 ; 6 *Ib.* 561.

It was further contended that Geisse did not, under the act of 1856, acquire such a right in the ferry as would have entitled him or his heirs to an action for disturbance.

The finding of the court was, that Geisse was the owner in fee of the landing on the New Jersey shore. Before the passage of the act of 1856, a ferry between the two landings was run by tenants who leased the ferry of Geisse, and used the landing on the Pennsylvania shore by the sufferance or permission of its owner. As far back as 1834 it was known as Geisse's ferry ; and in the title of the act it is called his ferry. The expression, " from *his landing* at the foot of Columbus street . . . . to *his landing* on the opposite Pennsylvania shore," in the act, is merely descriptive of the termini of the ferry, by reference to its prior use, without regard to the title to the lands at each terminus. In the same year of 1856, one George Decker, who was the owner of the Pennsylvania landing, obtained a grant from the legislature of that state of the exclusive right of ferriage for six hundred yards along the Pennsylvania shore. Thereafter the ferry was kept up and maintained uninterruptedly by the owners of the franchises and landings in both states, by agreements made from time to time.

Neither the fact that the title to the Pennsylvania landing was in another, nor that the exclusive ferry franchise on that shore existed in another, will operate to defeat the grant made to Geisse by the legislature of this state. The grant was of

a franchise capable of existence independent of the title to land. To enable the owner of such a franchise to exercise it and enjoy its emoluments, he must obtain the right to use the land on both sides of the river, for the purpose of receiving and landing passengers, but he need not have any property in the soil. *Peter* v. *Kendall,* 6 *B. & C.* 703 ; *Newton* v. *Cubitt,* 12 *C. B., N. S.,* 32 ; *S. C.* 13 *C. B., N. S.,* 864 ; *Bowman* v. *Waltham,* 2 *McLean* 376 ; *Fay, Petitioner,* 15 *Pick.* 243. The grant, by one state, of a ferry franchise over a river which is the boundary between it and another state, is valid, and it is not necessary to the validity of such a grant that there be concurrent action by the legislatures of both states, nor that the grantee have the right of a landing on the other side, or beyond the state by which the grant is made. *Conway* v. *Taylor,* 1 *Black U. S.* 603 ; *Freeholders* v. *The State,* 4 *Zab.* 718 ; *People* v. *Babcock,* 11 *Wend.* 586. That, by reason of hostile legislation in the other state, the grantee may be unable to exercise his franchises on the other shore ; or, because of exclusive rights in others under such legislation, his profits may be diminished, will not defeat his franchise, as far as his own property rights are concerned, or the jurisdiction of his state extends. The franchise may be less valuable for that reason, but it will be valid, as far as it goes. *Conway* v. *Taylor ; People* v. *Babcock, supra.*

Precisely this effect was given by the court to the fact that the title to the landing and the ferry franchises on the Pennsylvania shore were in another. The jury was instructed to take into consideration, in estimating the value of the plaintiff's franchises, the difficulty and uncertainty of making arrangements with the ferry owner on the Pennsylvania shore, and was expressly directed to limit the damages to be awarded to the value of the plaintiff's own franchise, excluding entirely the injury done to the owner of the Pennsylvania franchise.

Another class of errors assigned, relates to the admission of evidence of the income derived by the plaintiffs from the ferry for several years immediately preceding the erection of

the bridge. This testimony was clearly competent. The jury was required by the defendant's charter to compensate the plaintiffs for the damages they sustained by the erection of the bridge. The injury they suffered was in being deprived of the tolls they might have received from the ferry, in case the bridge had not been built. In no other way would the jury have been able to estimate the extent of the injury, except by proof of the earnings previously realized from the ferry. That method of ascertaining the damages was recognized as the proper and legitimate means of estimating the plaintiffs' loss by the Supreme Court and Court of Errors in the case between these parties, reported in 6 *Vroom* 474, and 7 *Ib.* 537.

The remaining errors assigned relate to matters of minor importance in the cause.

Exception was taken to the admission of evidence in relation to the rates of tolls prescribed by the board of chosen freeholders of the county of Warren, to be charged at this ferry. The rates were adopted at a meeting of the board in May, 1855, by a resolution, and were to take effect on the succeeding April. The proof of the establishment of these rates was by the testimony of a witness who was present when it was done, and by the production of a copy of the resolution certified by the clerk of the board under his hand, to be a true copy from the minutes of the board, which certificate is dated on the 4th of September, 1855.

The objection made on the argument, that there was no sufficient proof that the person who signed as clerk was, in fact, the clerk of the board, is not tenable. No objection was made at the trial on that ground. If that reason had then been given for the rejection of the evidence, the proof could readily have been supplied. When a party excepts to the admission of testimony, he is bound to state his objection specifically, and on error he is confined to the objection so taken. *Burton* v. *Driggs*, 20 *Wall.* 125; *Moran* v. *Green*, 1 *Zab.* 562.

By the first section of the act concerning ferries, (*Nix. Dig.* 337,) the board of chosen freeholders is empowered and di-

rected to fix the rates to be taken at the several ferries within their respective counties, and to revise, alter, or amend them at their discretion. The second section requires the owner of any ferry to keep a table of such rates set up so near the landing as to be open and visible to passengers ; and by the third section, a stipulated fee is allowed the clerk of the board for a copy of the rates, " certified under his hand." By the eighth section of the act incorporating the chosen freeholders, it is made the duty of the clerk to keep the minutes, and enter the orders and proceedings of the board in a book to be kept for that purpose. *Nix. Dig.* 123. The clerk being bound to make a record of the proceedings of the board in fixing the rates for this ferry, a copy of the record thereof, duly certified, is the proper evidence thereof. 1 *Greenl. Ev.*, § 498.

The table of rates adopted is a license to the owner of the ferry to charge the rates established ; and the statute, in making provision for its authentication by a copy certified under the hand of the clerk, manifestly designed that the copy so authenticated should be evidence of the right of the licensee to receive the stipulated sums for the stipulated services. For the purpose of showing the rates of toll allowed to be charged, the paper was competent evidence. That the clerk prefaced the resolution by a recital of other matters in relation to the manner in which the business was brought before the board, will not exclude the entire paper. No objection was made to the admission of a part of the paper on that ground. It was objected to as a whole.

That the table of rates produced was adopted before the legislative grant was made to Geisse, is immaterial. The rates once adopted continued in force until changed by the board under the first section of the act. The testimony was, that no alteration was subsequently made in them. The rates fixed, applied to the ferry which was worked by Geisse, and was rated to him. They were applicable to it as a ferry, although Geisse converted the ferry, which previously existed only by user, into a public franchise under a legislative grant.

But even if the rates established by the board before the

act of 1856 was passed, are not such a prescribing of tolls as is contemplated by that act, it would make no difference in this action. The suit is not brought for tolls earned, but for the recovery of compensation for the franchise of a ferry. If the board of chosen freeholders had not fixed any rates, the franchise would be in existence, and the owner might have had the rates fixed by the freeholders at any time. The value of the evidence was only in showing what the public authorities, having power, from time to time, to establish rates of ferriage, considered as reasonable tolls at this ferry.

The admission of the testimony of Christian H. Geisse, that Heyberger and Stompfel were agents of his father in leasing the ferry to prior occupants, was also excepted to. The witness testified to a knowledge of Heyberger's agency, from conversations he heard between Heyberger and the father. It is to be inferred that the conversation occurred in the transaction of the business of the ferry. It was objected to on the ground that such conversations were had in the absence of the defendants.

Agency, as a question of fact, may be proved by the acts, declarations, or conduct of the principal and agent. 2 *Greenl. Ev.*, § 60. The proof is not limited to acts or declarations in the presence of the opposite party. The fact of agency may also be proved by such evidence in a collateral proceeding, although the agent was appointed by a power of attorney in writing. The purpose of the evidence was to show that Lamb and Decker, who operated the ferry, as a matter of fact recognized the ferry as belonging to Geisse. That fact is sufficiently shown by the production of leases signed by them, made in the name of Geisse, and in which they agreed to pay rent to him.

Furthermore, the agency of both Heyberger and Stompfel was prior to 1852. The decision of the court, that the franchise, with respect to which the action was solely maintainable, could only be derived from the legislative grant, made the testimony in relation to their acts entirely immaterial. The only bearing the transactions with which they were con-

nected had in the case, was in identifying the landings referred to in the legislative grant to Geisse. That was so conclusively done by the testimony of George Decker, who worked the ferry from 1848 to 1866, and paid rent to the Geisses after 1852, and by other witnesses, as not to be a disputable question in the cause. If the testimony was illegal, its admission would be no ground of reversal.

The action was properly brought by the plaintiffs, without joining the owner of the franchise on the Pennsylvania shore. There being no unity of estate in the several owners of the two privileges, the interest affected was several ; and, although the injury to each was due to a common cause, separate actions must be brought. *Brown on Parties* 211 ; 2 *Saund.* 117, *note b.*

Other exceptions appear on the record which it is not considered necessary to discuss.

It is sufficient to say that, having examined the entire record, we find no error in the proceedings, and the judgment should be affirmed.