Condemnation proceeding by the State, by and through its State Highway Commission, composed of T.H. Banfield and others, against M.A. Cerruti and *Page 105 
Rose M. Cerruti, husband and wife, and others, to acquire agricultural lands owned by defendants.
The Circuit Court of Multnomah County, Frank C. Howell, pro tem., assessed defendants' damages, and the State appealed.
The Supreme Court, Lusk, C.J., held that testimony relating to profits derived from adjacent lands, and from speculative profits to be derived from defendant's lands had no bearing on question of market value, and were not admissible.
JUDGMENT REVERSED AND CAUSE REMANDED.
The state of Oregon, through its State Highway Commission, commenced this proceeding in eminent domain for the purpose of acquiring 2.47 acres of agricultural land (being a portion of a larger tract comprising about forty-four acres) owned by the defendants, M.A. and Rose M. Cerruti, and against which the defendants, Joseph J. and Mabel F. Fisher, hold a mortgage. The land lies west of Troutdale in Multnomah County, and the parcel to be taken will form a part of the New Columbia River Highway.
The state offered the owners $3,000.00 as just compensation for the land taken. The jury returned a verdict assessing defendants' damages at $4,000.00, and from the consequent judgment the state has appealed.
By appropriate assignments of error, based on objections made on the trial, the state raises the question, broadly stated, of the admissibility in evidence of testimony as to profits which may be derived from *Page 106 
the use of land as bearing on the question of market value.
In the vicinity of the land in question are farm lands, which, according to substantial evidence, are similar in kind and quality to that of the defendants and which are planted to celery and lettuce. Defendants' land had not been so cultivated. The defendant, M.A. Cerruti, testified that when he acquired the tract in 1946 it was for the most part covered with weeds and Johnson grass, and that he had been cultivating it for the purpose of getting rid of these growths. His principal crop had been corn. By planting crops of that kind, he testified, he was able to cultivate the land with a tractor and thus get rid of the Johnson grass; this could not be done if small crops were put in because "you tear all the crops out in trying to get rid of the Johnson grass." For about six or eight months he had been putting about ten loads of barn manure on the land a week.
W.G. Morrison, a witness for the defendants, who owns and farms land in the vicinity of defendants' land, was asked to state "how much you are making per acre from cultivating your land". Counsel for the plaintiff objected on the ground that "profits are not a proper index of the market value of land, and on the further ground that what a farmer will be making on adjoining ground is no indication of the market value of the property in controversy." The court ruled:
 "I will limit the inquiry as to what like land, similar land, under the usual husbandry or average farmer diligence and attention will produce, not what any one farmer might make, because there might be a disparity between the different kinds of attention and skill and so on." *Page 107 
Counsel for the defendants then rephrased his question to conform to the ruling, whereupon counsel for the state said: "If the court please, I don't want to keep interjecting here, but may the record show that we take objection to this type of question and the answers." The court said "So understood", and counsel for the defendants made no objection to the ruling. The witness was then permitted to answer the question, and stated that, if the land were cultivated for celery, "you should get around a thousand crates per acre." He was then asked what that would mean under the market conditions during the past season and testified that "there was two of us that realized close to six thousand dollars apiece" on "approximately seven acres of celery", and that this was net profit.
Other witnesses for the defendants gave similar testimony. One swore that "the average farmer who uses average diligence and skill in taking care of land and producing crops" should realize a thousand dollars per acre net profit from crops grown on land "of this type"; another that a tenant on a farm owned by him "is making $1500.00 a month", that "the prior owner must have made that or better", and that a man on an adjoining tract "was making a very big profit in 1940"; and the defendant, M.A. Cerruti, that farmers on lands adjacent to his are realizing $1200.00 an acre net profit from celery and lettuce crops. All this testimony was admitted over the repeated objections of the plaintiff.
The record raises two questions: (1) Was it error to admit evidence of the net profit a farmer of average skill and industry could make by cultivating land similar to that of the defendants for the production of celery and lettuce? (2) Was it error to admit evidence of the actual net profits realized from such cultivation of similar lands? *Page 108 
These appear to be new questions in this state. The general rule is that evidence of profits derived from a business conducted on property is too speculative, uncertain and remote to be considered as a basis for computing or ascertaining the market value of the property in condemnation proceedings. Orgel on Valuation Under Eminent Domain 529, § 161; 2 Nichols on Eminent Domain (2d ed.) 1173, § 446; 2 Lewis on Eminent Domain 1273, § 727. See annotations, 134 A.L.R. 1125, 7 A.L.R. 163. Lewis states the reason for the rule as follows: "The profits of a business do not tend to prove the value of the property upon which it is conducted. One man will get rich while another will become bankrupt in conducting the same business upon the same property" (idem.). Furthermore, it is to be borne in mind that what is taken is the real property, not the business. Lewis, op. cit., 1272. To the same effect see Orgel, op. cit., 534, § 161.
But there are well-established exceptions to the general rule. The overriding principle is thus stated by Lewis, op. cit., 1274, § 727:
 "The profits derived from the use of the property itself may be shown, whenever such profits would be an indication of value. If a valuable city lot is devoted to gardening purposes, the profits derived from it may be no indication of its value. But if it is improved to correspond with its locality and surroundings, the rents derived from it, after deducting taxes and expenses, will be a very important factor in determining what it is worth. Where a toll-bridge was taken, it was held proper to show the income from it during a series of years preceding the taking. So the profits derived from farming afford a criterion of the value of the farm." *Page 109 
Similarly, it is said in Brainerd v. State, 131 N.Y.S. 221, 229:
 "* * * Where the personal skill, experience, and efforts of the owner plays too prominent a part, the profits realized from the business conducted upon real property constitute but little aid in determining the value of the property, but, where the earnings depend chiefly upon the location, soil, or character of the property itself, the profits derived from it may furnish reliable evidence of its value."
The reason for admitting rental value has been said to be "because it is almost as fixed and certain as the market value of the property." Gauley E. Ry. Co. v. Conley, 84 W. Va. 489,100 S.E. 290. In the toll bridge, and also in the turnpike cases, and the well-known case of the scenic viewpoints in the vicinity of Niagara Falls, In re State Reservation, 16 Abb. N.C. (N.Y.) 159, evidence was admitted of the profits derived from the use of the properties because such profits were the entire or chief source of value. See Columbia Delaware Bridge Co. v. Geisse,38 N.J.L. 39, aff. 38 N.J.L. 580; State v. Suffield and T. BridgeCo., 82 Conn. 460, 74 A. 775; Chestnut Hill Spring HouseT.T. Co. v. Montgomery County, 228 Pa. 1, 76 A. 726;Montgomery v. Schuylkill Bridge Co., 110 Pa. 54, 20 A. 407.
The decision of this court in Public Market Company v. City ofPortland, 179 Or. 367, 390, 391, 170 P.2d 586, rests upon its own particular facts. It was there held that evidence of income derived from the business conducted on the property could be considered as an element in determining market value because the case dealt with a special purpose building, there was no comparable property in the city, and consideration of profits was necessary to avoid over-valuation *Page 110 
of a new building which constituted an over-improvement of the vacant land. The case is cited by the defendants, but is not in point. Neither is Portland v. Postill, 123 Or. 579, 592,263 P. 896, cited by the plaintiff, excepting in so far as it recognizes the general rule excluding evidence of profits. There the property was a leasehold interest in part of a building. The question was whether the defendant was entitled to show the profit derived by him from the business — a restaurant and card room — conducted by him on the premises, and the court said that "evidence of profits of this character is not admissible to show substantive damages, although in certain instances it may be admitted as indicating to some extent the rental value of the premises." As, however, the defendant had refused to take advantage of an offer of the trial judge to receive the evidence for the latter purpose, it was held that he was not in a position to complain in this court.
The weight of authority seems to support the view that evidence of profits derived from the use of agricultural lands is relevant to the question of market value and therefore admissible. City of Los Angeles v. Deacon, 119 Cal.App. 491,7 P.2d 378. In the case just cited, which involved the question of the admissibility of evidence of the net profit made in operating a rock and gravel plant on the property being condemned, the court said: "It appears from the annotation in 65 A.L.R. 462, that California is to be numbered among the minority of jurisdictions which disapprove of evidence of net income as substantive proof of market value * * *" The leading case in California is Stockton Copperopolis R.R. Co. v. Galgiani,49 Cal. 139, decided in 1874. There, *Page 111 
the land condemned was planted with vines and cultivated and used as a vineyard, and the court held that evidence of annual net profits was inadmissible. "The profit for any year", it was said, "would depend upon many and varying circumstances, such as the nature of the season, the price of labor, the condition of the market as to supply and demand in respect to the particular product, etc. A valuation derived from such evidence would be conjectural and speculative, and would not form a proper basis for an estimate of damages." De Freitas v. Town of Suisun,170 Cal. 263, 149 P. 553 (1915) appears to be contrary to this holding, but, according to the opinion in City of Los Angeles v.Deacon, supra, what was said in the De Freitas case about net income was "unmistakably dictum". See, also, San Diego Land andTown Co. v. Neale, 88 Cal. 50, 25 P. 977.
Opposed to the California rule regarding agricultural lands are the following decisions: Denver v. Quick, 108 Colo. 111,113 P.2d 999, 134 A.L.R. 1120; Creighton v. Board of WaterCommissioners, 143 N.C. 171, 55 S.E. 511 (value of annual hay crop); Brainerd v. State, supra; Stolze v. Manitowoc TerminalCo., 100 Wis. 208, 75 N.W. 987; City of Cushing v. Pote,128 Okla. 303, 262 P. 1070; Weyer v. Chicago, W. N.R.R. Co.,68 Wis. 180, 31 N.W. 710; Reisert v. City of New York, 174 N.Y. 196, 66 N.E. 731 (action of trespass); Alabama Power Co. v.Herzfeld, 216 Ala. 671, 114 So. 49. See, also, 2 Lewis on Eminent Domain (3d ed.) 1274, § 727; 2 Nichols on Eminent Domain (2d ed.) 1173, § 446. But the question of the admissibility in evidence of income realized from the property being condemned is not involved on this appeal and need not now be decided. It is true that the court *Page 112 
overruled an objection to a question which counsel for the defendants asked of the witness, M.A. Cerruti, as to the profit per acre which he had realized from his corn and other crops. The question was never answered, however, and the ruling presents nothing for our consideration. And, even assuming that such evidence is admissible, it does not follow that the defendants should have been permitted to show the profits made by the owners of other lands or to introduce opinion evidence as to probable profits from defendants' land if it were planted with celery and lettuce — crops which, the record indicates, had not been grown upon it for twenty years.
As to the latter question Mr. Orgel says:
 "A court that admits evidence of realized profits derived from a farm may nevertheless exclude estimates of prospective profits on the ground that they are mere guesses. There is little unequivocal authority as to the admissibility of evidence of prospective income expected to be obtained from farming operations." Orgel, op. cit., 552, § 168.
The author then discusses briefly Booker v. Venice Carondolet Railway Co., 101 Ill. 333; Weyer v. Chicago, W. N.R.R. Co., supra; and City of Cushing v. Pote, supra, which might be perhaps cited for the admission of this type of evidence, but which, as Mr. Orgel's analysis of them indicates, are inconclusive as authority.
We are of the opinion that the admission of such evidence in this case was error. The question for decision by the jury was the reasonable market value of the property at the time of the taking. It is true, as counsel for the defendants urge, that in the determination of market value, any use to which the property *Page 113 
may be applied, and all the uses to which it may be adapted, may be considered. Lewis, op. cit., 1233, § 706, 1234, § 707; Cityand County of Denver v. Lyttle, 106 Colo. 157, 103 P.2d 1;Denver Joint Stock Land Bank v. Board of County Commissioners,105 Colo. 366, 98 P.2d 283; Wassenich v. Denver,67 Colo. 456, 186 P. 533. But it is a different thing to show profits that may be realized in the event that the property in the future should be put to a particular use. "It is the present actual value of the land with all its adaptations to general and special uses, and not its prospective, or speculative, or possible value based upon future expenditures and improvements that is to be considered." Richmond P.R. Co. v. Seaboard, etc., Co.,103 Va. 399, 407, 49 S.E. 512; Appalachian Power Co. v. Johnson,137 Va. 12, 30, 119 S.E. 253. See, also, Central Georgia PowerCo. v. Stone, 139 Ga. 416, 77 S.E. 565; Hamilton v. Pittsburgh,B. L.E.R. Co., 190 Pa. 51, 42 A. 369, 51 L.R.A. 319; SanDiego Land and Town Co. v. Neale, supra. Before the defendants' land can be used for the growing of celery and lettuce it must be prepared for that use by the expenditure of an undetermined amount of labor and money. In the meantime it is entirely possible that conditions, economic or otherwise, would have intervened to turn the hypothetical business into a financial failure. The evidence objected to introduces collateral issues and is too speculative and too likely to mislead the jury to be considered as a factor in determining value.
We agree with the statement of the court in Chairman ofHighway Commission v. Parker, 147 Va. 25, 136 S.E. 496, that "it would be unwise to lay down a hard and fast rule applicable to every case, as to what elements properly enter into consideration in determining the market value of property sought to *Page 114 
be condemned". Accordingly, it is to be understood that our decision is limited to the question presented by the facts of this case. It should be added that we have seen no decision which sustains the proposition that evidence of profits which may be derived from land when it shall be put to a new use at some indefinite future date, is a factor proper to be considered on the question of the present market value of such land.
The reasons for excluding such evidence apply equally to the evidence of profits made on adjoining lands. In Idaho FarmDevelopment Co. v. Brackett, 36 Ida. 748, 213 P. 696, the land under condemnation was a cattle ranch in southern Idaho. The court approved the admission of evidence "as to the revenue ordinarily derived from cattle ranches in southern Idaho, of approximately the same size and character as the Brackett ranch", saying that "The income which can be derived from a tract of land, when put to advantageous use and operated with ordinary skill, has, of course, an important bearing upon its market value." Recognizing that the income may fluctuate from time to time by reason of the weather, the market, and other conditions, and the ability and skill of those in charge, the court held it proper to permit a witness, in stating the market value of land, to consider the average net income which it could be expected to produce under average conditions. (This ruling, it should be noted, evidently referred to the land in its then condition.) But the court said: "Under no circumstances would it be proper to introduce evidence as to income from other ranches, this being altogether too remote." Because of the admission of such evidence the judgment was reversed. For a stronger reason, it was error in this case to admit evidence of profits made by others from the cultivation of celery. *Page 115 
In view of these conclusions it was, also, error to instruct the jury that in determining market value they might "consider the profits which a person in the defendants' position could normally anticipate from the best possible use of the land".
Over the objection of the plaintiff, the court received in evidence the testimony of the witness, B.A. Kliks, an owner of land in the vicinity of the land being condemned, that a real estate man had made him an offer of $1600.00 for an acre and a half of his land. The ruling is assigned as error. The assignment must be sustained. It is well settled in this and other jurisdictions that offers of sale and purchase of similar land in the vicinity are inadmissible, for the reason, among others, that such evidence places before the court or jury an absent person's declaration or opinion as to value, while depriving the adverse party of the benefit of cross-examination. Portland O.C. Ry.Co. v. Ladd Estate Co., 79 Or. 517, 155 P. 1192; Hine v.Manhattan R. Co., 132 N.Y. 477, 30 N.E. 985; Davis v. TheCharles River Branch Railroad Co., 65 Mass. 506; Helena PowerTransmission Co. v. McLean, 38 Mont. 388, 99 P. 1061; Blincoev. Choctaw, O. W.R. Co., 16 Okla. 286, 83 P. 903, 4 L.R.A. (N.S.) 890; 18 Am. Jur., Eminent Domain, 996 § 351; 2 Lewis on Eminent Domain, 1146, § 666. Defendants' counsel do not question the rule, but they seek to justify introduction of the otherwise incompetent evidence because of certain testimony concerning Mr. Kliks' property given by one of the witnesses for the plaintiff. This evidence, however, was brought out on cross-examination of the plaintiff's witness; and, in any event, nothing that he or any other witness testified to warranted or excused violation of the rule of evidence in question. *Page 116 
We are asked to affirm the judgment, notwithstanding the alleged errors, on the theory that they were harmless. We may best answer by quoting what was said by Judge Alton B. Parker, speaking for the court in Hine v. Manhattan R. Co., supra, in response to a similar appeal made under similar circumstances:
 "We do not well see how this court can ascertain or determine what weight it had. The question of value was sharply contested, and, if we cannot say that this testimony did not influence the decision of the court, the appellant is entitled to have its admission declared to constitute reversible error. The presumption necessarily arises from the situation presented by the evidence and the decision of the court that the evidence was considered * * *."
To the same effect see Idaho Farm Development Co. v.Brackett, supra.
For the foregoing reasons the judgment of the Circuit Court is reversed and the cause remanded for further proceedings in conformity to this opinion.
PAGE, J., did not participate in this decision. *Page 117