Argued January 8, revised and remanded March 21, petition
for rehearing denied April 17, 1962

# OREGON PORTLAND CEMENT COMPANY *v.*
# STATE TAX COMMISSION
### 369 P. 2d 765

*Richard Rink,* Assistant Attorney General, Salem, argued the cause for appellants. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Maurice O. Georges,* Portland, argued the cause for respondent and cross-appellant. With him on the briefs were King, Miller, Anderson, Nash & Yerke, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

GOODWIN, J.

The Oregon State Tax Commission appeals, and the taxpayer cross-appeals, from an order made by the circuit court for Clackamas County which directed the refund of certain property taxes assessed and paid for the tax year 1958-59.

The taxpayer is the Oregon Portland Cement Company, a corporation, and the property in question is the taxpayer's cement plant in Oswego. The parties have agreed generally on the replacement cost of the plant, less functional obsolescence and deterioration.[1]

---

[1] ORS 308.205 and 308.215 specify that ordinarily property is to be assessed at its market value for ad valorem tax purposes. As a general rule, the fair market value of property is established by appraisals based upon sales of comparable property. Or. State Tax Comm. Ad Valorem Property Tax Regs., Art. 8205.1 A-1; Art. 8205.2 A-3 (1960). The parties have agreed in this case that there are no sales of comparable properties in Oregon, and accordingly have appraised the property on a replacement-cost-less-depreciation basis.

The Commission seeks to treat this as the final value to which the assessment formula should be applied. The taxpayer seeks to have the Commission's values further reduced by a deduction based upon the taxpayer's theory of economic obsolescence. The trial court allowed a part, but not all, of the requested reduction in value. The Commission appealed on the ground that any reduction for "economic obsolescence" was improper. The taxpayer cross-appealed, asserting that it did not receive all the relief to which it was entitled.

When the plant was built, in 1915, virtually all the raw material was transported to the plant by the Southern Pacific Company from calcium carbonate (lime) and argillaceous (clay-bearing) rock sources served by that carrier. In recent years, the principal source of lime has been the taxpayer's quarry at Lime, Oregon, near Baker. Lime is still shipped by rail. The lime cars now arrive in the Portland yards of the Union Pacific Railroad Company and are then delivered to the Oswego plant by the Southern Pacific, the connecting carrier for that haul. Argillaceous rock, as needed, is hauled via Southern Pacific, and can be disregarded for the purposes of this appeal.

The taxpayer asserts that there would be an annual saving in transportation costs of some $140,000 if its plant were to be removed from Oswego to a hypothetical site in the St. Johns district of Portland. For the purposes of this appeal we accept, without approving, the taxpayer's figures. The potential saving is computed upon present volumes at carload rates, including switching charges, published by the respective carriers. In the hypothetical Portland location, there would be savings in both freight and car-handling charges. The taxpayer contends that the disadvantage

of the Oswego location, as compared with the St. Johns site, would lower the price a purchaser would be willing to pay for the assessed property if it were for sale; hence, economic obsolescence.

Accordingly, this operating disadvantage should, or so the argument runs, be capitalized and subtracted from the replacement-cost-less-depreciation value (Commission's valuation) to obtain the market value of the property. Thus, using a capitalization factor of ten, the taxpayer says $1,400,000 should be subtracted from the $4,678,782 at which the Commission appraised the plant.

■ The problem lies not so much in deciding whether a taxpayer may obtain relief because of true economic obsolescence in an appropriate case,[2] but rather in determining whether the facts of the case at bar justify the taxpayer's unusual, if not unique, theory of economic obsolescence. If shown to be relevant in the search for the market value of a given piece of property, real or personal, a deduction for economic obsolescence is justified. Oregon State Tax Commission Ad Valorem Property Tax Regulations (hereafter referred to as Regs.), Art. 8205.1 B-1-b-(2) (1960).

Location ordinarily plays an important part in fixing the value of real property and fixtures, but does not ordinarily affect the value of movable personal property. However, for the purposes of this case, we shall assume, without deciding, that the property in question is of a type whose proper assessment requires a consideration of its location.

Any discussion of the taxpayer's theory requires a review of methods of valuation. The basic test is market value. Regs. Art. 8205.1 A; Art. 8205.2 A-3.

[2] See U. S. Cartridge Co. v. U. S., 284 US 511, 516, 52 S Ct 243, 245, 76 L Ed 431, 434 (1932) (income tax case).

There is, of course, no established market for cement plants, so some secondary method of arriving at a market value must be used. Both parties have agreed on what the Regulations call the cost approach as the basic valuation method. Regs. Art. 8205.1 B; Art. 8205.2 A-3. This method entails estimating the cost of replacing the entire property and then reducing the resulting figure by the amount of depreciation of the improvements and personal property. As noted above, the Commission contends that there is no economic obsolescence in the present case and that, therefore, the agreed upon figure for replacement cost less deterioration and functional obsolescence is the proper assessment value.

■■ The cost approach does not purport to take into consideration the income-producing potential in arriving at the value of a given property. The Commission sought, however, to obtain income information to answer the taxpayer's contention of economic obsolescence. The taxpayer successfully resisted this demand in the trial court, contending that its income was irrelevant. As the authorities cited by the taxpayer point out, the general rule is that the capitalization of the income of a going concern is not a proper method of assessing its real and personal property for ad valorem tax purposes.[9] It is very difficult if not impossible to segregate income attributable to the real property and personal property being assessed, to say nothing of trying to make a proper allowance for income resulting from intangibles such as good will and management. There are, however, two exceptions to

[9] E.g., People ex rel. Hotel Paramount Corp. v. Chambers, 298 NY 372, 83 NE2d 839 (1949); State of Oregon v. Cerruti et al., 188 Or 103, 108, 214 P2d 346 (1950) (dictum); Assessors of Quincy v. Boston Consol. Gas Co., 309 Mass 60, 64-65, 34 NE2d 623, 626 (1941) (dictum).

the general rule: (1) when an income capitalization figure will serve to offset an overvaluation of improvements; *Public Market Co. v. Portland,* 179 Or 367, 390-393, 170 P2d 586 (1946), approved in *State of Oregon v. Cerruti et al.,* 188 Or 103, 109-110, 214 P2d 346, 349, 16 ALR2d 1105, 1110 (1950); *Assessors of Quincy v. Boston Consol. Gas Co.,* 309 Mass 60, 34 NE 2d 623 (1941); and (2) when the income attributable to the property in question can be segregated with reasonable certainty, e.g., rental income. *State of Oregon v. Cerruti et al.,* supra (farm income); *Assessors of Quincy v. Boston Consol. Gas Co.,* supra, 309 Mass at 65, 34 NE2d at 626 (dictum). In the trial court the Commission did not show that its demand for general income figures fell within either of these exceptions, and thus the Commission was not entitled to such information at the time it was demanded. It does not follow, however, that the taxpayer's success in keeping out evidence of its net income helps the taxpayer prove its case.

Only if freight costs are an income (expense) factor directly attributable to location could it be argued that higher income because of lower freight costs is relevant in arriving at the market value of a given productive property. Beginning with the general rule that business income is not a reliable indicator of property value, we recognize an exception when the net income is directly related to the property, e.g., net farm income, as in *State of Oregon v. Cerruti et al.,* supra. But, it must be remembered, it is net income which is relevant. We have found no authority treating a single cost item such as property taxes or freight rates as relevant by itself. Cf. *State of Oregon v. Cerruti et al.,* supra (by implication).

■ Standing alone, transportation costs have no

relevance to the market value of the taxpayer's plant. A potential buyer is not primarily interested in a single cost item; rather, the price he will pay for property depends upon the net income he can earn upon his investment after all costs are taken into account. Therefore, the taxpayer must show not merely that one item of costs would be lower in the hypothetical location, but that net income necessarily would be higher in that location. This would require a full accounting of present revenues, costs, and net income, together with projected costs, revenues, and net income at the hypothetical plant. Such figures, if reliable, might show that the hypothetical plant would produce a greater net income than would the present plant. Such net income figures might then be relevant in computing market values, but only if values are being computed solely by the capitalization of income approach. However, the taxpayer has stoutly refused to disclose any of its income figures, and rejected the capitalization of income approach in this case.

There is, finally, one central weakness in the taxpayer's position. It has attempted to use disparate valuation methods and thus has attempted to compare unlike with unlike. We will assume, without deciding, that a taxpayer may use the income capitalization method of valuation if it can segregate its income properly attributable to each type of property, and if the Commission concurs in this approach. Again, if the taxpayer wishes to use the cost approach, it may do so, but it may not mix the two approaches against the objection of the Commission unless the taxpayer can show that its case falls within the first exception to the general rule. See *State of Oregon v. Cerruti et al.*, 188 Or 103, 109-110, 214 P2d 346 (1950) [com-

menting upon *Public Market Co. v. Portland,* 179 Or 367, 170 P2d 586 (1946)]. Without a full disclosure of net income, of course, no such showing is possible.

To adopt the taxpayer's theory in this case would permit every business to seek out an ideal hypothetical location for itself and then discount for ad-valorem-tax purposes the supposed economic disadvantage of its *de facto* site in comparison with the advantages of the hypothetical location which it has seen fit to use only hypothetically.[4] In seeking market values, the tax assessors would be forced to consider freight rates, market studies, labor costs, and a multitude of other data fed into the valuation process at the option of the taxpayer but without the safeguard of these data being made relevant to income. It is net income only that can make such considerations relevant to market value. Not so connected, such evidence is meaningless.

The case at bar does not present the spectacle of a business whose going-concern value has been substantially reduced by economic obsolescence. Cf. *People v. Miller,* 26 NYS2d 232, 240 (Sup. Ct. Queens Co., 1941) (power plant unused apparently because electricity could be purchased for less than it cost to produce). We can assume for the purposes of this case that the concept of economic obsolescence might apply to a gasoline service station standing by an abandoned highway, or to a brewery left by the enactment of prohibition without a market for its product. Here, however, we have a profitable business.

[4] The taxpayer's theory is reduced to a mathematical absurdity by increasing the freight volume sufficiently so that the transportation-cost advantage of the hypothetical site becomes $467,878 instead of $140,000 annually. Then by capitalizing that supposed saving the taxpayer's formula would produce an assessed value of zero for the Oswego plant, which admittedly plays a major role in earning profits conceded by the taxpayer to be substantial.

The judgment is reversed, with instructions to reinstate the orders of the Commission except as they were amended by the circuit court in particulars not now challenged by this appeal. The cross appeal is dismissed; neither party to recover costs on the appeal or the cross appeal.

Reversed and remanded.